IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

September 05, 2025
LAURA A. AUSTIN, CLERK
BY  s/ S. MELVIN
    DEPUTY CLERK

| | |
|---|---|
| I-81, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| Counterclaim Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| Felher Transportation, Inc., ) | |
| ) | |
| Defendant, ) | Civil Action No. 5:25-cv-00031 |
| Counterclaim Plaintiff, ) | |
| Crossclaim Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| MVT Leasing, LLC and MVT Services, ) | |
| LLC, ) | |
| ) | |
| Defendants, ) | |
| Crossclaim Plaintiffs. ) | |

## MEMORANDUM OPINION

This matter is before the court on Felher Transportation, Inc.'s ("Felher") motion to dismiss cross-claims filed by MVT Leasing, LLC and MVT Services, LLC (collectively, the "MVT entities") (Dkts. 31, 32). The cross-claims seek indemnification from Felher for any damages the MVT entities may owe to I-81, LLC, the original plaintiff in this action. Felher moves to dismiss the cross-claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Felher's motion will be granted in part and denied in part.

# I.    Background

## A.  Procedural History

This action arises from a February 15, 2024 accident involving a single tractor-trailer in Augusta County, Virginia.  Plaintiff I-81, LLC initially brought the action against Felher, MVT Leasing, and MVT Services to recover damages for unpaid towing, recovery, clean-up, and storage services it allegedly provided in response to the accident.  (*See* Compl. & Pet. to Sell Vehicle ¶¶ 1, 12 (Dkt. 10 at 3–11).)  I-81 alleges that Felher owns the 2017 Kenworth Tractor involved in the accident and one or both MVT entities own the 2020 Hyundai Trailer the tractor was pulling at the time.  (*Id.* ¶¶ 7–9, 12.)

On April 4, 2025, Defendants timely removed the case to this court based on diversity jurisdiction.  (Dkt. 1.)  Prior to removal, Felher filed a demurrer and answer to the complaint and a counterclaim against I-81.  (Dkt. 10 at 81–88, 90–106.)  MVT Leasing and MVT Services jointly filed a demurrer and answer to the complaint.  (Dkt. 10 at 43–50, 54–62.)  They also filed separate cross-claims against Felher for indemnification.  (MVT Leasing Cross-Claim (Dkt. 10 at 63–71); MVT Services Cross-Claim (Dkt. 10 at 72–78).)  The MVT entities each served Felher with a summons on June 24, 2025, after the case was removed to this court.  (*See* Dkts. 25, 26.)

On July 14, 2025, Felher moved to dismiss the cross-claims under Federal Rule of Civil Procedure 12(b)(6).  (Dkts. 31, 32.)  The MVT entities filed responses opposing Felher's motions to dismiss.  (MVT Leasing Resp. (Dkt. 35); MVT Services Resp. (Dkt. 36).)

On August 13, 2025, the court heard argument on both the demurrers and Felher's motions to dismiss the MVT entities' cross-claims.  (Dkt. 39.)  On August 28, 2025, the court entered an order granting in part and denying in part the demurrers.  (Dkt. 41.)

**B. Allegations in the MVT Entities' Cross-Claims**[1]

In their cross-claims, MVT Leasing and MVT Services allege that, at the time of the accident, Felher was the owner of the tractor and either owned or leased the trailer involved in the accident.  (MVT Leasing Cross-Claim ¶¶ 5, 7–8; MVT Services Cross-Claim ¶¶ 5, 7–8.) They further allege that Felher was operating the vehicle at the time of the accident, and that Felher is the only party that could have acted negligently or recklessly to cause the damages I-81 says it incurred.  (MVT Leasing Cross-Claim ¶¶ 4, 10–11; MVT Services Cross-Claim ¶¶ 4, 10–11.)

The cross-claims also include allegations about two agreements related to the trailer involved in the accident.  The first is a September 1, 2020 "Master Lease and Purchase Agreement" between MVT Leasing and R Leasing, LLC.  (MVT Leasing Cross-Claim ¶ 24; *see* Master Lease Purchase Agreement (Dkt. 10 at 121–26) [hereinafter "Agreement A"].)  The agreement, which the parties refer to as "Agreement A," transferred the trailer at issue in this case from MVT Leasing to R Leasing.  (*See id.*)  Felher is not a party to Agreement A.

Paragraph 12 of Agreement A includes an indemnity provision, which states:

> Except to the extent provided herein, BUYER agrees, as part of the consideration of this Agreement, to indemnify and hold SELLER, its subsidiaries, affiliates, officers, agents and employees, harmless from and against any and all loss, damage, claim, demand and liability of every nature, including reasonable attorney fees, arising directly or indirectly from or in connection with

---

[1] The facts alleged in the cross-claims are accepted as true when resolving Felher's motions to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> BUYER's possession, use or operation of the Equipment including actions or claims for negligence or strict liability in tort but excluding losses, damage claims, demands or liabilities arising out of SELLER's intentional or grossly negligent acts.

(Agreement A ¶ 12(A).)  The next paragraph of Agreement A states that "[u]pon execution this Agreement shall be binding upon the parties, their successors and interests [sic], legal representatives and assigns.  BUYER shall have no right to assign, pledge or otherwise encumber this Agreement or any interest therein, nor to sublet the Equipment without the prior written consent of SELLER." (*Id.* ¶ 13(A).)

The second agreement is a May 8, 2023 "Equipment Sublease Purchase Agreement" between R Leasing and Felher.  (MVT Leasing Cross-Claim ¶ 22; R Leasing LLC Equipment Sublease Purchase Agreement (Dkt. 10 at 127–30) [hereinafter "Agreement B"].)  The parties refer to this agreement as "Agreement B."  MVT Leasing alleges that Agreement B provided for the sale of the trailer from R Leasing to Felher.  (MVT Leasing Cross-Claim ¶ 22.)  Neither MVT entity is a party to Agreement B, and neither is mentioned in the agreement.

Paragraph 10 of Agreement B includes an indemnity and hold-harmless clause.  In relevant part, the clause reads:

> Buyer shall indemnify, defend and hold Seller harmless from: (a) any loss or damage Seller may sustain as a result of any damage to or loss of Seller's interest in the Equipment due to any cause, including without limitation, collision, fire, lighting, theft, explosion, flood, windstorm, or act of God; (b) any loss or damage Seller may sustain as a result of the death or injury to, or damage to the property, including cargo, of any third person as a result, in whole or in part, of the use or condition of the Equipment; (c) any loss, claim, liability, damages, expense or disbursement, penalty or fine, disposal, remediation or corrective action loss, or forfeiture or seizure that may arise in whole or part from the use or condition, actual or alleged, of the Equipment, Buyer's default under this Agreement, or the failure, actual or alleged, of Buyer to use and maintain the Equipment as provided under this Agreement and in compliance with Applicable Laws, and (d) any claim, lien or liability arising from work performed

or for material supplied in connection with the operation or maintenance of the Equipment.

(Agreement B ¶ 10.)

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). In addition to the facts alleged in the complaint, the court may consider documents attached to the complaint as exhibits or those explicitly incorporated into the complaint by reference. Fed. R. Civ. P. 10(c); *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). To avoid dismissal, the plaintiff must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## III.    Analysis

MVT Leasing's cross-claim alleges three different causes of action against Felher: equitable indemnification (Count I), implied indemnity (Count II), and indemnification as a

third-party beneficiary (Count III). (MVT Leasing Cross-Claim ¶¶ 14–33.) MVT Services'
cross-claim alleges a single count for equitable indemnification. (MVT Services Cross-Claim
¶¶ 14–19.) Felher argues that the cross-claims do not allege enough facts to state any of those
claims for indemnification. The court finds that the MVT entities have plausibly alleged claims
for equitable indemnification, but that MVT Leasing has not pled enough facts to support its
claims for implied indemnity or indemnification as a third-party beneficiary.

## A. Equitable Indemnification

MVT Leasing and MVT Services both allege claims for equitable indemnification.
(MVT Leasing Cross-Claim ¶¶ 14–19; MVT Services Cross-Claim ¶¶ 14–19.) They claim that
Felher must indemnify them for any liability to I-81 because Felher had control and possession
of the tractor-trailer at the time of the events giving rise to this action and would be the sole
party liable for any negligent acts or omissions that caused damages. (*See id.*)

Under Virginia law, "[e]quitable indemnification arises when a party without personal
fault, is nevertheless legally liable for damages caused by the negligence of another." *Carr v.
Home Ins. Co.*, 463 S.E.2d 457, 458 (Va. 1995). "Equitable principles allow the innocent party
to recover from the negligent actor for the amounts paid to discharge the liability." *Id.* The
Supreme Court of Virginia has explained that "[a] prerequisite for recovery based on equitable
indemnification is the initial determination that the negligence of another person caused the
damages." *Id.*; *see also Pulte Home Corp. v. Parex, Inc.*, 579 S.E.2d 188, 193 (Va. 2003) (same).
"Without that determination, neither the negligent actor nor the innocent party can be held
liable for the damages claimed." *Carr*, 463 S.E.2d at 458 (reversing trial court decision granting
a potential indemnitee summary judgment on an equitable indemnification claim because there

had been no determination that the potential indemnitor negligently caused the damages giving rise to the indemnification claim).[2]

Felher argues that the MVT entities cannot state a claim for equitable indemnification because no court has made an initial determination that Felher's negligence caused I-81's alleged damages.  (Felher Mem. at 7–11 (Dkt. 33).)  The court will not dismiss the equitable indemnification claims for that reason.  While a negligence determination is a "prerequisite for recovery" based on equitable indemnification, *Carr*, 463 S.E.2d at 458, the court agrees with the district courts that have held a plaintiff may state a plausible equitable indemnification claim under Virginia law by alleging negligence in its complaint.  *See Cont'l Cas. Co. v. Pye-Barker Fire & Safety, LLC*, No. 6:23-cv-00033, 2024 WL 3859804, at *1–2 (W.D. Va. Aug. 19, 2024); *Sedar v. Boston Props. Ltd. P'ship*, No. 1:18-cv-1111, 2019 WL 13331581, at *2 (E.D. Va. Feb. 12, 2019); *Williams ex rel. Estate of Williams v. United States*, 469 F. Supp. 2d 339, 343 (E.D. Va. 2007).  That position is consistent with Federal Rule of Civil Procedure 13, which states that a cross-claim "may include a claim that [a] coparty is *or may be* liable to the crossclaimant."  Fed. R. Civ. P. 13(g) (emphasis added).  And while the federal pleading standards apply in this diversity case, *see Faulkner v. Dillon*, 92 F. Supp. 3d 493, 500 (W.D. Va. 2015), Virginia has adopted similarly lenient pleading requirements for indemnification claims.  Va. Code § 8.01-281(A) states that a party may plead a cross-claim for indemnity "based on future potential liability," and that "it shall be no defense thereto that the party asserting [the cross-claim] has

---

[2] The indemnitee is the party seeking indemnification; the indemnitor is the party against whom indemnification is sought.

made no payment or otherwise discharged any claim as to him arising out of the transaction or occurrence."

Some courts, including in this district, have held that a party cannot state an equitable indemnification claim absent a prior determination of negligence. *See AIU Ins. Co. v. Omega Flex, Inc.*, No. 3:11-cv-00023, 2012 WL 1119791, at *3 (W.D. Va. Apr. 3, 2012); *AMCO Water Metering Sys., Inc. v. Travelers Cas. Sur. Co. of Am.*, No. 3:03-cv-00003, 2003 WL 22299025, at *3 (W.D. Va. Sept. 30, 2003); *Rivanna Solid Waste Auth. v. Van Der Linde*, 78 Va. Cir. 418, 422 (Va. Cir. Ct. July 21, 2009). However, this court is persuaded by the reasoning in the *Continental Casualty Co.* and *Sedar* decisions, which note that the Supreme Court of Virginia has characterized an initial negligence determination as a precondition to *recovery*, not as a threshold requirement for stating an equitable indemnification claim. *See Cont'l Cas. Co.*, 2024 WL 3859804, at *2 n.2 (citing *Sedar*, 2019 WL 13331581, at *2).

Felher relies on the Supreme Court of Virginia's decision in *Pulte*, which affirmed a judgment sustaining a demurrer to an equitable indemnification claim. *See Pulte*, 579 S.E.2d at 193. The *Pulte* decision addressed a very different procedural posture. At the time the trial court dismissed the equitable indemnification claim, it already had dismissed a negligence claim the original plaintiff had brought against the would-be indemnitor. *See id.* at 189–90. As another court has recognized, that decision "was tantamount to a finding that the target indemnitor was not negligent to the original plaintiff and thus could not be liable for equitable indemnification." *Sedar*, 2019 WL 13331581, at *2. Felher also cites the Court of Appeals of Virginia's recent decision in *Fortune-Johnson, Inc. v. QFS, LLC*, but that decision is distinguishable as well. *See* Nos. 1757-23-4, 1772-23-4, 1773-23-4, 1775-23-4, 1776-23-4, 2025

WL 595319, at *9 (Va. Ct. App. Feb. 25, 2025) (affirming judgment sustaining demurrer to equitable indemnification claims where the lower court had dismissed an underlying negligence claim).

Here, the MVT entities have alleged that Felher had control and possession of the vehicle at all times relevant to I-81's claims and "would be the negligent actor" who proximately caused the incident giving rise to this action "[i]n the event that liability is found against one or more of the defendants." (MVT Leasing Cross-Claim ¶¶ 16–19; MVT Services Cross-Claim ¶¶ 16–19.) At this stage, those allegations are enough to survive dismissal.

Accordingly, the court will deny Felher's motion to dismiss MVT Leasing and MVT Services' claims for equitable indemnification.

### B. Implied Indemnity

Count II of MVT Leasing's cross-claim alleges a claim for "implied indemnity." (MVT Leasing Cross-Claim ¶¶ 20–27.) The claim asserts that the two agreements concerning the trailer—Agreement A and Agreement B—combined to give MVT Leasing an implied contractual right of indemnity from Felher. (*See id.*)

Virginia courts sometimes use the term "implied indemnity" to refer to equitable indemnification. *See Favor v. Quinn*, 89 Va. Cir. 143, 146 (Va. Cir. Ct. July 23, 2014); *CSX Transp., Inc. v. Titan Am., LLC*, 72 Va. Cir. 593, 595 (Va. Cir. Ct. Nov. 2, 2004). MVT Leasing has separately alleged a claim for equitable indemnification here; its claim for implied indemnity instead seeks to establish that it had an implied contractual relationship with Felher based on Agreements A and B.

MVT Leasing has not entered into any written agreement with Felher. In the absence of a written agreement, "[a]n implied contractual relationship giving rise to a right of indemnity exists only where there are unique factors or a special relationship between the parties." *Allied Terminals v. HMT, Inc.*, 89 Va. Cir. 206, 211 (Va. Cir. Ct. Sept. 22, 2014); *see Favor*, 89 Va. Cir. at 146; *Bd. of Dirs. of Birdneck Villas Condo. Ass'n v. Birdneck Villas, LLC*, 73 Va. Cir. 175, 180 (Va. Cir. Ct. Apr. 2, 2007).

MVT Leasing alleges that it has a special relationship with Felher because Felher agreed to indemnify R Leasing in Agreement B, and R Leasing previously had agreed to indemnify MVT Leasing in Agreement A. (MVT Leasing Cross-Claim ¶ 26.) Based on this court's review of Virginia case law, the two agreements do not plausibly create the type of relationship needed to confer an implied contractual right of indemnity. Virginia courts have held that a simple contractual relationship is not a special relationship that can establish an implied right of indemnity. *See Birdneck Villas*, 73 Va. Cir. at 181 (holding that oral contracts between a general contractor and subcontractors did not give the general contractor an implied right of indemnification against the subcontractors); *but see Int'l Fid. Ins. Co. v. W. Va. Water Auth.*, No. 7:11-cv-00441, 2012 U.S. Dist. LEXIS 155052, at *12 (4th Cir. Oct. 30, 2012) (holding that a contract created an implied right of indemnity where the parties "had contractual obligations that tied them to one another to an unusually close degree"). Here, there is no indication that MVT Leasing even had a contractual relationship with Felher. MVT Leasing was not a party to R Leasing's agreement with Felher.

MVT Leasing argues that the assignment provision in Agreement A supports its implied indemnity claim. (MVT Leasing Resp. at 10–11.) That provision states that

Agreement A shall be binding "on the parties, their successors and interests [sic], legal representatives and assigns." (Agreement A ¶ 13(A).)  But MVT Leasing does not allege any non-conclusory facts suggesting that R Leasing assigned its interest in Agreement A to Felher or that Felher was a successor in interest to R Leasing.  The facts alleged do not plausibly demonstrate that Felher even was aware of R Leasing's earlier agreement with MVT Leasing.

MVT Leasing also argues that its "well-plead claim for equitable indemnity bolsters the special relationship and unique factors required for a claim of implied indemnity." (MVT Leasing Resp. at 9.)  That argument conflates two different theories of recovery.  For the reasons stated above, the MVT entities have stated a claim for equitable indemnification.  To the extent MVT Leasing alleges a separate claim for an implied right of indemnity based on Agreements A and B, that claim fails because there is no basis for inferring such a right from the contracts.

Finally, MVT Leasing calls the court's attention to provisions in Agreement B that outline the actions that constitute a default under the agreement.  (*See id.* at 10.)  Those provisions do not plausibly give MVT Leasing any implied right of indemnity against Felher.

The court therefore will grant the motion to dismiss Count II of MVT Leasing's cross-claim.

## C. Indemnification as Third-Party Beneficiary

Lastly, Felher moves to dismiss MVT Leasing's claim for "indemnification as a third-party beneficiary." (MVT Leasing Cross-Claim ¶¶ 28–33.)  In Virginia, a person's right to sue as a third-party beneficiary of a contract is governed by Va. Code § 55.1-119. *Aetna Cas. &*

*Sur. Co. v. Fireguard Corp.*, 455 S.E.2d 229, 231–32 (Va. 1995). In relevant part, § 55.1-119

provides:

> An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he is not a party to such instrument; and if a covenant or promise is made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon that he might maintain as though it had been made with him only and the consideration had moved from him to the party making such covenant or promise.

Va. Code Ann. § 55.1-119. "The essence of a third-party beneficiary's claim is that others have

agreed between themselves to bestow a benefit upon the third party but one of the parties to

the agreement fails to uphold his portion of the bargain." *Tingler v. Graystone Homes, Inc.*, 834

S.E.2d 244, 268 (Va. 2019) (quoting *Levine v. Selective Ins. Co. of Am.*, 462 S.E.2d 81, 83 (Va.

1995)). To establish that it is a beneficiary of a contract, a third party "must show by the

evidence that the contracting parties clearly and definitely intended to confer a benefit upon

[it]." *Fireguard Corp.*, 455 S.E.2d at 232.

As § 55.1-119 notes, a contract may confer rights on a third party even if it does not

name that party. *Id.* "While a contract may expressly state such an intent to benefit a third

party, evidence of such intent need not be limited to the four corners of the instrument."

*Tingler*, 834 S.E.2d at 268. A third party may have an enforceable right, for example, when "all

parties expressly understood" that the party was a beneficiary of the contract, even though the

contract did not name them. *See Levine*, 462 S.E.2d at 83–84.

Felher argues that neither the text of Agreement B nor any alleged facts suggest that R

Leasing and Felher intended to indemnify MVT Leasing for damages caused by Felher.

(Felher Mem. at 16–17.) The court agrees. By its terms, the indemnity clause in Agreement

- 12 -

B benefits only the "Seller"—that is, R Leasing.  (Agreement B ¶ 10.)  MVT Leasing is not

mentioned anywhere in Agreement B.  Nor do any facts outside the four corners of Agreement

B support a reasonable inference that MVT Leasing is a third-party beneficiary of the

agreement's indemnity clause.  MVT Leasing claims that it is the clear and definite beneficiary

of the clause because it retained possession of the title to the trailer and had a security interest

in the trailer when Agreement B was signed.  (MVT Leasing Cross-Claim ¶¶ 30–33.)  But there

is no indication that Felher, at the time it signed Agreement B, was aware of those facts.

Agreement B says nothing about MVT Leasing's continued possession of title or security

interest.  The agreement states only that *R Leasing* "shall retain physical possession of the title

where permitted by law" and be granted "a security interest in the Equipment."  (Agreement

B ¶¶ 7–8.)

MVT Leasing also argues that the assignment provision in Agreement A supports its

third-party beneficiary claim.  (MVT Leasing Resp. at 11–13.)  It contends that Felher, as R

Leasing's successor or assignee, acquired R Leasing's obligation to indemnify MVT Leasing.

(*Id.* at 11.)  As the court has explained, the text of Agreement B and the limited facts alleged

do not support a reasonable inference that R Leasing and Felher intended to transfer R

Leasing's indemnification obligations under Agreement A to Felher.  MVT Leasing cites two

decisions in which courts held that third parties stated claims for indemnification, but neither

decision supports its argument.  *See Allstate Ins. Co. v. Structures Design/Build, LLC*, No. 7:15-

cv-00354, 2016 WL 1071040, at *5–6 (W.D. Va. Mar. 17, 2016) (holding that a property owner

and its subrogee plausibly alleged they were third-party beneficiaries of a subcontract that

expressly provided a right of indemnity to the "Owner," because the property owner was

"indisputably the 'Owner' under the subcontract"); *Commonwealth v. CCA Indus.*, 82 Va. Cir. 621, 629–30 (Va. Cir. Ct. Dec. 22, 2009) (declining to dismiss third parties' claim for indemnification based on a successor-in-interest clause because the third parties pled facts showing they succeeded to the original contracting party's liabilities under the agreement).

Because the alleged facts and exhibits do not plausibly show that Felher and R Leasing intended to give MVT Leasing a right of indemnification against Felher, the court will grant the motion to dismiss Count III of MVT Leasing's cross-claim.

### IV.    Conclusion

For the foregoing reasons, the court will **GRANT in part** and **DENY in part** Felher's motions to dismiss MVT Leasing and MVT Services' cross-claims (Dkts. 31, 32).  The motions are **GRANTED** as to MVT Leasing's cross-claims for implied indemnity and indemnification as a third-party beneficiary.  Those claims are **DISMISSED without prejudice**.  The motions are **DENIED** as to MVT Leasing and MVT Services' claims for equitable indemnification.

An appropriate Order will issue.

**ENTERED** this 5th day of September, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE